COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Willis and Clements
Argued at Salem, Virginia


TAZEWELL COUNTY DEPARTMENT OF
 SOCIAL SERVICES, BOBBY THOMAS WEBB
 AND SANDRA LEA WEBB
                                    MEMORANDUM OPINION[*] BY
v.   Record No. 1388-01-3          JUDGE JEAN HARRISON CLEMENTS
                                        MARCH 5, 2002
MARY E. BOOTHE


                FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
                       Donald R. Mullins, Judge

             Stephen E. Arey; Kelly C. Necessary, Guardian
             ad litem for the minor children (F. Bradley
             Pyott; Stephen E. Arey, P.C.; Dudley,
             Galumbeck, Necessary & Dennis; Gillespie,
             Hart, Altizer & Whitesell, on brief), for
             appellants.

             No brief or argument for appellee.


     Appellants Tazewell County Department of Social Services

(DSS) and prospective adoptive parents Bobby Thomas Webb and

Sandra Lea Webb appeal the decision of the Circuit Court of

Tazewell County (trial court) invalidating the permanent

entrustment agreements executed by Mary E. Boothe as to her two

minor children and the orders based thereon of the juvenile and

domestic relations district court (juvenile court) terminating

Boothe's residual parental rights.  The trial court concluded

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

that, although Boothe had not, as she claimed, been coerced by her attorney or the social worker into executing the permanent entrustment agreements and had not revoked those agreements or objected to or appealed from the orders terminating her residual parental rights, Boothe's feeling "that her consent in signing the entrustment agreements was not voluntary" constituted a sufficient basis for rescinding the entrustment agreements and the juvenile court's orders terminating her parental rights. Appellants contend the trial court erred in reaching that conclusion. We agree and reverse the trial court's judgment.

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as necessary to the parties' understanding of the disposition of this appeal.

## I. BACKGROUND

The record in this case includes a written statement of facts in lieu of a transcript. By order dated October 22, 1998, the trial court, upon hearing evidence in a custody and visitation proceeding, placed Boothe's two children, D.A.B. and B.T.B., born November 8, 1993, and July 13, 1995, respectively, in foster care with DSS and remanded the matter to the juvenile court for further proceedings. By order dated May 25, 2000, the juvenile court approved, in accordance with the children's best interests, DSS's foster care plan amending the goal for the children to adoption.

-

On May 31, 2000, DSS filed a petition with the juvenile court for termination of Boothe's residual parental rights to her children. A termination hearing was set for July 13, 2000.

On July 13, 2000, having been advised by her counsel of the consequences of signing such documents, Boothe executed entrustment agreements permanently relinquishing legal custody of her two children to DSS for the purpose of adoption. The agreements executed by Boothe provided that they may be revoked "until the child is 25 days old and fifteen days have elapsed from the signing of this Agreement" or "any time prior to the child's placement in the home of the adoptive parents." The juvenile court entered an order on July 13, 2000, noting Boothe's execution of the permanent entrustment agreements and setting the matter over to July 28, 2000, to allow Boothe the requisite fifteen days to revoke the agreements, if she wished. On July 28, 2000, Boothe not having revoked the permanent entrustment agreements, the juvenile court, finding by clear and convincing evidence that it was in the children's best interests to do so, entered final orders approving the permanent entrustment agreements and terminating Boothe's residual parental rights to the two children. Boothe did not object to the entry of those orders or note an appeal from them.

On November 8, 2000, the Webbs filed petitions with the trial court to adopt D.A.B. and B.T.B. The trial court entered orders of reference regarding the two children on November 9, 2000,

-

noting, inter alia, that the children had already been placed in the Webbs' home.

In a letter to the juvenile court dated December 18, 2000, Boothe asked the court to stop the adoption proceedings and to hold a trial on the termination of her parental rights. In the letter, Boothe claimed that her attorney and the DSS social worker assigned to the case pressured her into signing the entrustment agreements on July 13, 2000. She further noted that she was not in the "right state of mind" when she executed the agreements because her husband had been sentenced on June 2, 2000, to sixty years in prison. She also noted that she was sentenced to three years in prison on August 16, 2000. In a subsequent letter to the trial court dated January 2, 2001, Boothe made the same claims and requests.

Upon receipt of Boothe's letter, the trial court, sua sponte, set a hearing for April 11, 2001, to determine whether Boothe had been coerced into executing the permanent entrustment agreements. At that hearing, Boothe testified that she was "under a great deal of stress" at the time she entered into the permanent entrustment agreements. She stated that her husband had been sentenced to sixty years in prison and she could not eat, sleep, or hold a job. She also stated that, on July 13, 2000, before the scheduled termination hearing, both her attorney and the social worker showed her the entrustment agreements and told her that, "if she loved her children enough,

-

she would do the right thing."  According to Boothe, the social worker advised her that the children would stay together if they were adopted.  Boothe was also advised that DSS would go ahead with the termination hearing if she did not execute the entrustment agreements.

Boothe further testified that she spoke with her attorney for approximately fifteen minutes after the social worker left the room.  Boothe recalled that, while her attorney never told her to sign the agreements, she did tell her that "it was no use to proceed with the termination hearing."  Ultimately, according to Boothe, her attorney convinced her that signing the entrustment agreements "was the right thing to do."  Her attorney, Boothe further recalled, also advised her that she would have fifteen days after executing the agreements to revoke them if she changed her mind.  Thus, according to Boothe, although she initially wanted to proceed with the termination hearing, she ended up signing the agreements.

Boothe further testified that she was not threatened during this matter and that she did not get angry.  She also stated that she spoke with the guardian ad litem for the children during that time, but they did not discuss the entrustment agreements.

Social worker Dominica Asbury testified that, prior to the scheduled termination hearing on July 13, 2000, she discussed with Boothe, in the presence of Boothe's attorney, the

-

possibility of executing entrustment agreements in lieu of proceeding with the termination hearing. She stated that she told Boothe that such agreements would be in the best interests of her children. Asbury further testified that, following the discussion, she left Boothe with her attorney.

Attorney Susan Henderson, who represented Boothe at the termination proceedings on July 13, 2000, testified that she was aware at the time of Boothe's pending criminal proceedings and her husband's recent incarceration. Henderson further testified that Boothe did not mention either matter during their discussions about the entrustment agreements, either in the presence of the social worker or later when they were alone. She added that Boothe was not under medical or psychological treatment at the time she executed the agreements.

Henderson also testified that, following the social worker's departure from the room, she advised Boothe that she was prepared to go forward with the termination hearing. She also stated that she advised Boothe that getting the hearing continued was not likely and that, "based on the facts and the testimony of the witnesses who were summoned to testify, the judge would probably enter an order of termination." She further testified that Boothe initially wanted to go ahead with the hearing but ultimately decided to execute the permanent entrustment agreements. Henderson recalled that she specifically advised Boothe that she had fifteen days in which

-

to revoke the entrustment agreements, as did the juvenile court judge when they informed him that permanent entrustment agreements had been executed.

Upon the evidence heard at the April 11, 2001 hearing, the trial court found, <u>inter</u> <u>alia</u>, (1) that Boothe did not revoke the entrustment agreements she executed on July 13, 2000, or object to or appeal from the juvenile court's final orders of July 28, 2000, approving those agreements and terminating Boothe's residual parental rights and (2) that Boothe was not coerced by her attorney, the social worker, or anybody else associated with the proceedings into executing the permanent entrustment agreements she entered into on July 13, 2000.  Nevertheless, the trial court nullified the entrustment agreements and the juvenile court's orders based on those agreements and remanded the matter to the juvenile court for a termination hearing because the trial court was "of the opinion" that Boothe

> felt that her consent in signing the entrustment agreements was not voluntary because among other reasons, she had entered a plea of guilty to certain criminal charges in the Circuit Court of Tazewell County, Virginia on July 12, 2000 and her husband . . . had been sentenced by a jury to sixty years in the state penitentiary upon conclusion of a trial on June 2, 2000.

This appeal followed.

## II.  ANALYSIS

Appellants contend that the trial court erred when it invalidated the entrustment agreements and the juvenile court's

-

orders terminating Boothe's parental rights on the basis of its

finding that Boothe "felt that her consent in signing the

entrustment agreements was not voluntary."  We agree.

Code § 63.1-219.30, which sets forth the method by which a

permanent entrustment agreement may be revoked, provides, in

pertinent part, as follows:

> A valid entrustment agreement
> terminating all parental rights and
> responsibilities to the child shall be
> revocable by either of the birth parents
> until (i) the child has reached the age of
> twenty-five days and (ii) fifteen days have
> elapsed from the date of execution of the
> agreement.  In addition, a valid entrustment
> agreement shall be revocable by either of
> the birth parents if the child has not been
> placed in the home of adoptive parents at
> the time of such revocation.

Here, Boothe did not object in any manner to the permanent

entrustment agreements she executed on July 13, 2000, until she

sent a letter dated December 18, 2000, to the juvenile court and

a similar letter dated January 2, 2001, to the trial court,

stating that she was pressured by her attorney and the DSS

social worker into signing the entrustment agreements and that

she was not in the "right state of mind" at the time.  Clearly,

then, the entrustment agreements were not revoked in accordance

with the provisions of Code § 63.1-219.30.  Not only did Boothe

fail to revoke the entrustment agreements within the allowable

fifteen days following their execution, the subject children

were more than twenty-five days old at all times pertinent to

-

these proceedings and the children had been placed in the home of the adoptive parents well before Boothe manifested her intent to challenge the entrustment agreements.

Our analysis, however, does not end there. Code § 63.1-219.28 provides that the parental rights of a birth parent who has executed a permanent entrustment agreement may be restored to the birth parent "by circuit court order prior to the entry of a final order of adoption upon proof of fraud or duress." Thus, to set aside the permanent entrustment agreements executed in the present case by Boothe, the trial court had to make a finding of fraud or duress.

Upon our review of the record, we conclude that the trial court made no such finding. Indeed, no allegation of fraud was ever made, and no evidence of any fraud was presented. Furthermore, the trial court specifically found, upon the evidence presented at the April 11, 2001 evidentiary hearing, that Boothe was not coerced by her attorney, the social worker, or anybody else associated with the proceedings into executing the permanent entrustment agreements. Rather, the trial court invalidated the entrustment agreements solely on the basis of its finding that Boothe "felt that her consent in signing the entrustment agreements was not voluntary" due to, "among other reasons," her continuing criminal proceedings and her husband's incarceration. In our view, such a finding does not constitute a finding of duress.

-

In considering the issue of whether a parent had entered into a permanent entrustment agreement under the influence of duress in Norfolk Div. of Soc. Servs. v. Unknown Father, 2 Va. App. 420, 345 S.E.2d 533 (1986), we described duress as follows:

> "Duress . . . means that degree of constraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or in apprehension to overcome the mind and will of a person of ordinary firmness. . . .

> \*      \*      \*      \*      \*      \*      \*

> Duress may exist whether or not the threat is sufficient to overcome the mind of a man of ordinary courage, it being sufficient to constitute duress that one party to the transaction is prevented from exercising his free will by reason of threats made by the other and that the contract is obtained by reason of such fact. Unless these elements are present, however, duress does not exist. . . . Authorities are in accord that the threatened act must be wrongful to constitute duress."

Id. at 434-35, 345 S.E.2d at 541 (quoting 6B Michie's Jurisprudence Duress and Undue Influence §§ 2-3 (Repl. Vol. 1985)). "The general rule is that 'duress must have been exercised upon him or her who sets it up as a defense, by him who claims the benefit of the contract, or by someone acting in his behalf or with his knowledge.'" Id. (quoting 25 Am. Jur. 2d Duress and Undue Influence § 21 (1966)).

Here, the trial court's finding that Boothe "felt that her consent in signing the entrustment agreements was not voluntary" was based not on any wrongful threats or coercion exercised upon

-

Boothe by those who had any interest in the entrustment agreements, or by those acting in their behalf. Rather, it was based on unfortunate circumstances in Boothe's life, at least partly of her own doing, that were beyond the control of DSS and Boothe's attorney. Thus, while there can be little doubt that Boothe's decision to execute the permanent entrustment agreements was fraught with stress and accompanied by a wide range of feelings, we conclude that the trial court made no finding of duress in connection with Boothe's execution of those agreements.

We hold, therefore, that, because it had no legal basis for doing so, the trial court erred in rescinding the permanent entrustment agreements executed by Boothe and the juvenile court's orders based thereon terminating Boothe's residual parental rights. Accordingly, we reverse the trial court's judgment and remand for further adoption proceedings consistent with this opinion.

Reversed and remanded.

-